Jones, J.
Petitioner challenges the constitutionality, under the equal protection clause, of provisions of statute, State regu *39 lation and local policy statement which taken together make the amount received by a recipient of old age assistance depend to some extent on the size and composition of the family unit with which she resides.
Prior to'August 1,1971, petitioner, a recipient of public assistance under the Old Age Assistance program, lived alone in her apartment. Under the provisions of subdivision 3 of section 131-a of the Social Services Law, in addition to her grant for rent, as the member of a one-person household, she received a monthly allowance of $84 for basic needs (her so-called “ preadded allowance ”) (also 18 NYCRR 352.2 [d]). Following hospitalization for a stroke, on August 2 petitioner moved into the apartment occupied by her daughter and her granddaughter, both of whom were themselves recipients of public assistance under the Aid to Families with Dependent Children program. Pursuant to the provisions of subdivision 3 of section 131-a and regulation 352.2 ([e] [1]), petitioner’s grant for basic needs was then reduced to $60 a month in accordance with the calculations set forth in the department’s “ Table for Cooperative Budgeting ”.
The reduction in grant was first upheld in a determination made by the State Commissioner of Social Services following a fair hearing sought by petitioner. The Appellate Division then confirmed the State Commissioner’s determination. The case is now before us on asserted constitutional grounds (CPLR 5601, subd. [b], par. 1).
Petitioner’s challenge to the reduction in her grant is twofold. First, she contests the principle of reduction in the amount of per capita assistance to recipients in multiperson households. Second, she asserts that, even if reduction in consequence of numbers of persons in the household were to be sustained, it is impermissible for the amount of the per capita grant to vary further according to the status of the other members of the household. Thus, she asserts that there would have been no reduction in the amount of her grant if, instead of joining her daughter and granddaughter who were on public assistance, she had chosen to reside with two self-maintaining nonlegally responsible relatives or friends or with two other, nonrelated welfare recipients. We think neither objection is well taken.
*40 The rationale behind the reduction in amount of grants to recipients in a multiperson household is not obscure. The amount of a grant is directly related to the measure of a recipient’s needs. In a multiperson household the per capita cost of many items, since they are shared, will be less. This consequence involves no attribution of the contribution by any one member of the household to the maintenance of any other member. Each contributes his own share to the reduced pooled costs. Nor is any reduction in the standard of living implied. Accordingly the reduction in petitioner’s grant in consequence of her having joined her daughter and granddaughter to form a three-person household has a rational basis and must be sustained. (Dandridge v. Williams, 397 U. S. 471; see Jefferson v. Hackney, 406 U. S. 535.)*
On the second branch of her assault, petitioner points to the department’s regulation which provides: “ (b) For the purpose of such monthly grants and allowances a child or children or adults residing with self-maintaining nonlegally responsible relatives or friends, shall be considered as a separate household ” (18 NYCRR 352.2 [b]); and to a statement which has been published by the New York City Department of Social Services: “ When unrelated families share a dwelling as a matter of convenience and regard themselves as separate families, a separate grant may be given to each family. The estimated needs and income of each family are computed separately allowing each a proportionate amount of the shared items.” (Policies Governing the Administration of Public Assistance and Social Services, published by the New York City Department of Social Services [1967], p. 220). Petitioner then observes that under this State regulation and this city policy statement she would have been treated substantially differently if, instead of joining her daughter and granddaughter who were on relief, she had formed a three-person household either with self-supporting relatives or friends or with other welfare recipients who were not related to her. Subdivision (b) would have forestalled a reduction in her benefits in the first instance; the policy *41 statement, in the second. There is plausibility to the contention that even if the amount of petitioner’s public assistance grant may be reduced on her joining a three-person household, the amount of her grant should not thereafter vary depending on the status of the other members of that three-person household, whether self-supporting or unrelated.
“ In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.” (Dandridge v. Williams, supra, p. 485.) By like token neither the State nor the local commissioner can be expected, in the design or administration of social welfare programs to meet the needs of individuals and families, to refine and hone the regulations to the point of absolute precision.
From the standpoint of the administration of welfare programs there is a difference of some substance between a family composed entirely of persons on public assistance and one which includes both welfare recipients and self-supporting persons. Although the Department of Social Services cannot, of course, mandate the exact uses for which public assistance grants shall be expended, nonetheless such expenditures are subject to the general oversight of the department. To a greater extent than may commonly be comprehended, recipients of public assistance do look to their social workers for guidance and counsel. Non-economic social services may be provided to meet special situations. There is a nexus of practical significance, if not legal sanction, which characterizes the relationship between recipients and workers, for which there can be no counterpart as between representatives of the department and the self-supporting members of a household in which a recipient may reside.
As to the two-family-but-all-welfare household to which the policy statement of the city department is addressed, again it cannot be said that the distinction there involved is necessarily irrational. Nothing appears in the record before us as to how the city department implements this policy in practice. One can imagine fact situations in which a finding that there were two separate family units would be quite irrational and unsupportable. On the other hand, other situations can be visualized when, even in the absence of any policy statement or regulation, *42 the facts and basic considerations of family integrity would call for a finding of the separateness of two families living under the same roof. We cannot say that under, no circumstances would the department ever be justified in treating as separate two unrelated families which shared the same dwelling.
There exists, however, in the posture of the regulatory system of which petitioner complains in this case, an even greater obstacle to her success on this branch of her appeal. As we have indicated, we find no difficulty under the equal protection clause or otherwisé with the principle of reduced per capita grants in multiperson households. Thus, we uphold the constitutionality of subdivision 3 of section 131-a of the Social Services Law. Petitioner’s challenge to the validity of the differentiation in treatment based on status of individual members of the household, whether self-supporting or unrelated, must of necessity focus on the provisions of subdivision (b) of State regulation 352.2 and of the policy statement of the city department. Were we then to agree with petitioner that allowance of grants under the provisions of regulation and policy statement would be impermissible, the consequence would be only to strike down such provisions in their application to others and to leave petitioner precisely where she now finds herself — entitled only to the reduced $60 per month grant under subdivision 3 of section 131-a. On no theory could her grant be reinstated at $84 per month. Thus, in the precise detail of the situation presented on this record the issue of the invalidity of subdivision (b) of regulation 352.2 and of the city policy statement is academic as to this petitioner.
We have examined petitioner’s other contentions and find them to be without merit.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge. Bkeitel and Judges Jasen, Gabrielli, Wachtler, Babin and Stevens concur.
Judgment affirmed, without costs.

 Cases cited by petitioner, holding that persons residing with public assistance recipients for whom they are not legally responsible may not be required to contribute to the support of such recipients, are inapposite.